NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2648
_____

LESLIE  L. SANDER,
                                        Appellant

v.

LIGHT ACTION,  INC.
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-10-cv-0684)
District Judge:  Hon. Leonard P. Stark
_____

Submitted Under Third Circuit LAR 34.1(a)
April 25, 2013

Before:   JORDAN, GREENBERG and NYGAARD, *Circuit Judges*.

(Filed: April 26, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Leslie Sander appeals the denial of her motion for reconsideration of an order

granting summary judgment to Defendant Light Action, Inc. ("Light Action") and

denying her motions for summary judgment and for leave to amend her complaint.  For

the following reasons, we will affirm.

## I.    Background[1]

From 2000 until she was fired in 2010, Sander was an employee of Light Action, a Delaware production company specializing in theatrical lighting, staging, audio-video systems, and outdoor roofing systems.  She became the company's Warehouse Manager in 2007 and received a new compensation plan as part of that change in position.[2]  Under that plan, Sander was entitled to a guaranteed base pay of $60,000, and she was expected to work 45 hours per week.  She could receive additional compensation for working at events, or "gigs," that occurred off-site, and for working overtime hours.  Those additional compensation opportunities were intended to keep her total pay level close to $74,118, which is what it had been before she changed positions.

In keeping with the plan, Sander was paid $1,153.85 a week for the weeks in which she only worked on-site, which corresponds to her $60,000 base pay.[3]  When she had off-site events, however, her amount of compensation was determined by prorating her hours.  For the hours that she worked "in the shop," she would be paid a corresponding percentage of her standard weekly rate.  For the hours she spent at the events, she was compensated at a higher rate, meaning that her total weekly compensation, assuming she did not take any leave days, was higher than her standard

---

[1] In accordance with our standard of review, we recite the facts in the light most favorable to Sander, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] She had previously been a Lighting Production Manager.

[3] $1,153.85 multiplied over 52 weeks totals $60,000.

weekly pay.[4] In total, Sander earned $76,253 in 2007, $71,983 in 2008, and $67,653 in 2009 under that compensation plan.

In May 2010, Sander complained to Light Action's management on at least one occasion about its leave policy and her level of compensation. Later that month, she informed Light Action that she was seeking legal counsel regarding her compensation complaints. On May 26 or 27, several mishaps in the preparation for a show prompted a disagreement between Sander and her supervisors, during which she became belligerent and hostile. After she returned home from work that day, she received a telephone call terminating her employment with Light Action.[5]

On August 12, 2010, Sander brought the present suit alleging, that she had not been paid overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 215(a)(2). On January 24, 2011, she filed an amended complaint that added a state law retaliation claim. After discovery, both parties moved for summary judgment, with Sander seeking partial summary judgment on her FLSA claim to overtime wages, and Light Action moving for summary judgment on all counts. Sander then filed a motion for leave to file a second amended complaint. On March 21, 2012, the District

---

[4] More specifically, Sander was generally paid $388.50 per show, a figure that appears to presume ten-hour "show days". When Sander worked a show day longer than ten hours, she earned $32.28 per hour on top of the $388.50. Her overtime rate for in-shop hours was $30.

[5] Sander states in her amended complaint that she was fired on May 26, 2010, whereas Light Action says she was terminated on May 27. Sander does not mention the conflict over the show in her briefing, nor does she present evidence to contradict Light Action's version of that event or deny that it occurred. We therefore assume that the conflict unfolded as Light Action describes, and that it occurred on the day that Sander was fired, whichever day that was.

3

Court denied that motion and Sander's motion for partial summary judgment. The Court granted Light Action's motion, finding that there was no genuine dispute that Sander was exempt from the FLSA overtime requirements because she was a salaried employee, and that she had presented no evidence of unlawful retaliation. Sander moved for reconsideration of that order, which was denied on May 18, 2012. This timely appeal followed.

## II.     Discussion[6]

Sander raises three arguments on appeal. First, she maintains that there is a genuine dispute of material fact as to whether her exempt status under the FLSA was undermined by Light Action's practice of prorating her hours, which she argues made her

[6] The District Court had subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C § 1331, and over the state law retaliation claim pursuant to 28 U.S.C § 1367. We have jurisdiction to review the denial of the motion for reconsideration under 28 U.S.C § 1291. An appeal from a denial of a motion for reconsideration also "brings up the underlying judgment for review," *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986) (internal quotation marks omitted), and Federal Rule of Appellate Procedure 4(a)(4)(A) provides that, if a such a motion was timely filed, "the time to appeal begins to run from the district court's disposition of the motion," *Long v. Atlantic City Police Dept.*, 670 F.3d 436, 438 (3d Cir. 2012). Sander filed her motion for reconsideration and her notice of appeal in a timely fashion, and thus we have jurisdiction to review both the denial of reconsideration and the underlying judgment. *See Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (concluding that the court had jurisdiction to review the underlying order dismissing the complaint because the plaintiff's "timely Rule 59(e) motion tolled the time to file a notice of appeal").

Although we review the denial of a motion to reconsider for abuse of discretion, *id.*, the District Court's grant of summary judgment is subject to plenary review, *Rauscher*, 807 F.2d at 348. "Summary judgment is appropriate where the Court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (quoting Fed. R. Civ. P. 56(c)). We review a district court's denial of a motion for leave to amend a complaint for abuse of discretion. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

4

an hourly employee entitled to overtime compensation.  Second, she asserts that the District Court erred in concluding that she failed to plead or prove her retaliation claim. Third, she contends that the Court abused its discretion by refusing to allow her to file a second amended complaint.  We address her arguments in turn.

A.    *FLSA Exemptions*

The FLSA establishes the general rule that "no employer shall employ any of his employees … for a workweek of longer than forty hours unless such employee receives compensation … at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Nonetheless, certain employees are exempted from that requirement, including individuals who are "employed in a bona fide executive, administrative, or professional capacity."  *Id.* § 213(a)(1).  An employee falls within that exemption if she is "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week," her "primary duty" is "directly related to the management or general business operations of the employer," and that duty "includes the exercise of discretion and independent judgment."  29 C.F.R. § 541.200(a).  The employer bears the burden of proving that a purportedly exempt employee satisfies those requirements.  *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) ("[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.").

5

At issue in this appeal is the "salary basis" component of that test.[7]  Light Action maintains that, as the District Court concluded, Sander was paid on a salary basis and therefore was an exempt employee not entitled to overtime under the FLSA.  Sander disagrees, insisting that, regardless of the terms of her compensation package, she was in fact paid as an hourly employee and thus should have been paid at a rate one and one-half times her normal salary any time she worked more than 40 hours a week.

Federal regulations provide that an individual is paid on a salary basis "if the employee regularly receives each pay period … a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."[8]  29 C.F.R. § 541.602(a).  In other words, the employee "must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."  *Id.*  Under that standard, employees "who can be docked pay for missing a fraction of a workday must be considered … hourly."  *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir. 1991).  On the other hand, employees who receive a fixed, predetermined amount plus an amount that may be subject to deductions are generally not considered hourly employees.  *Harvey v. Homebound Mortg., Inc.*, 547 F.3d 158, 165 (2d Cir. 2008) ("A two-part salary scheme in which employees receive a predetermined

_____

[7]  Sander concedes that her position at Light Action satisfied the "primary duty" requirements.

[8]  There are a number of exceptions to that requirement.  Most notably, full-day absences for personal reasons, sickness, or disability generally can be deducted from the predetermined salary without an employee losing exempt status.  29 C.F.R. § 541.602(b).

6

amount, plus … an additional portion subject to deductions for quality errors does not violate the salary-basis test unless the system is designed to circumvent the requirements of the FLSA." (internal quotation marks omitted)).

Sander argues that she is a non-exempt hourly employee under the FLSA because Light Action "docked" her hours when she worked outside the shop. (Appellant's Opening Br. at 8.) Specifically, she complains that, by prorating her hours during weeks in which she had shows, Light Action was improperly deducting money from the "predetermined amount" that she was supposed to receive each pay period. *See* 29 C.F.R. § 541.602(a). According to Sander, those "partial-day deductions" added up to a total of 241.3 hours, and thus she was effectively docked $6,220.04 from 2007 to 2010. (Appellant's Opening Br. at 23.)

But the conclusion that Sander was an hourly employee simply does not follow from the undisputed facts of her compensation scheme. Sander does not contest that, on weeks when she did not have any shows, she was paid her standard weekly rate regardless of how many hours she worked. As is clearly demonstrated by her time cards, whether Sander worked 31 hours, 38 hours, or 44 hours a week in the shop, she always earned $1,153.85. Moreover, on weeks in which she worked off-site at events, she earned even more, provided she did not take any sick days or vacation days. The reason that her hours were "prorated" during those weeks was not to deduct anything from her base rate, but rather to ensure that she was paid a premium for the hours she spent off-site. In other words, the additional compensation she earned for working at shows was effectively calculated on an hourly basis, and she was paid that premium on top of her

7

standard weekly salary.  The multi-tiered nature of that scheme does not change the fact that Sander earned as part of her compensation package "a predetermined amount … [that was] not subject to reduction."  29 C.F.R. § 541.602(a); *see also Harvey*, 547 F.3d at 165 (permitting a similar two-tiered structure).  The District Court was therefore correct to conclude that there is no genuine dispute as to whether Sander was a salaried employee, and her claim to FLSA overtime compensation fails as a matter of law.[9]

B.    *Retaliation Claim*

In her amended complaint, Sander also brought a retaliation claim against Light Action, alleging that the company "intentionally and maliciously discriminated against [her] in retaliation for her complaints in violation of 19 Del. C. § 726."  (App. at 41.) Sander now concedes that she has no viable cause of action under that provision of Delaware law, which prohibits discrimination on the basis of disability.  *See* Del. Code Ann. tit. 19, § 726 (prohibiting an employer from discriminating against an employee who "opposed any practice prohibited by this subchapter"); *id.* § 721 ("This subchapter is intended to encourage and enable qualified persons with disabilities to engage in

---

[9]  To the extent that there is a factual dispute regarding Sander's compensation, it is over the amount of additional compensation to which she was entitled, not whether her base pay was subject to deduction.  Sander argues that the show hours calculated at the premium rate should have been added on to her $1,153.85 base salary, meaning that if she worked a full week outside the shop, she should have earned more than twice her normal salary (her baseline $1,153.85, plus a week's worth of hours at the premium rate). Light Action agrees that she was entitled to compensation above the $1,153.85 baseline, but only in the amount represented by the difference between the premium and the base rates.  If this case were a contract dispute, that disagreement about the proper size of the premium perhaps would call for an interpretation of the pertinent contract provisions, and that could conceivably involve factual issues, but a disagreement about the size of the premium has no effect on Sander's status as an exempt employee under the FLSA.

8

remunerative employment ... .").  Nonetheless, Sander argues that "the unfortunate reference to discrimination in the retaliation paragraph" should not have prevented the District Court from treating the allegation as an FLSA retaliation claim, which is what she says she meant to bring.  (Appellant's Opening Br. at 28.)  What she wanted to do and what she actually did are, however, quite different.  Sander pled a disability discrimination claim under Delaware law, not an FLSA retaliation claim, and she cites no authority by which the District Court could have redrafted her claim to make it something it was not.  The Court was therefore correct to grant summary judgment to Light Action on that claim, as Sander provided no evidence that she was discriminated against on the basis of a disability.[10]

### C.  *Denial of Leave to Amend the Complaint*

Finally, Sander argues that the District Court abused its discretion by not allowing her to amend her complaint after both parties had moved for summary judgment, less than six weeks before trial.  Specifically, in response to a suggestion by Light Action that the partial-day deduction argument was not properly raised in the pleadings, she sought to add language to the complaint "in support of her claim for non-exemption from the FLSA

---

[10]  Even if Sander had succeeded in pleading an FLSA retaliation claim, the District Court correctly concluded that Light Action would still be entitled to summary judgment, as Sander presented no evidence that the reason Light Action provided for her termination – her belligerent behavior toward her supervisors – was a mere pretext for unlawful retaliation.  *Cf. Burton v. Teleflex Inc.*, __ F.3d __, No. 11-3752, 2013 WL 616973, at *6 (3d Cir. Feb. 20, 2013) (holding that when a defendant has provided a legitimate reason for an employment action, the burden shifts "back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination," and "[t]he plaintiff must make this showing of pretext to defeat a motion for summary judgment").

because of improper deductions from her base pay." (Appellant's Opening Br. at 11-12.) The District Court refused to permit such a late amendment to the pleadings, concluding that, "to the extent the Second Amended Complaint would add something new to the instant case," that addition was "too late – and too prejudicial and burdensome to Defendant, as well as disruptive to the Court" – to be permitted. (App. at 17-18.)

We cannot say that that conclusion was an abuse of the District Court's discretion. Although we have adopted a liberal approach to the amendment of pleadings, we also recognize that "when a movant has had previous opportunities to amend a complaint," or when allowing an amendment will place "an unfair burden on the opposing party," there may be sufficient ground to deny leave to amend. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Here, Sander had many opportunities to amend her complaint throughout the discovery process, and yet waited to do so until two weeks before the final pretrial conference, plainly burdening both the Court and the Defendant. It was therefore within the District Court's discretion to deny leave to amend.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's denial of Sander's motion for reconsideration, as well as its order granting summary judgment to Light Action, denying partial summary judgment to Sander, and denying leave to amend the complaint.