[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 27, 2004**
**THOMAS K. KAHN**
**CLERK**

_____

No. 02-15918

_____

D. C. Docket No. 00-02562 CV-T-30

JOHN HOGAN,
LEANNE MCCURLEY,
MARK STEPHEN HARRELL,
DANIEL MINK,

Plaintiffs-Appellants,

PRESTON PARTAIN,

Plaintiff,

versus

ALLSTATE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 27, 2004)**

Before EDMONDSON, Chief Judge, COX, Circuit Judge, and PAUL[*], District Judge.

PER CURIAM:

Five Allstate insurance agents filed a complaint on behalf of themselves and others "similarly situated" against Allstate Insurance Company ("Allstate"), seeking overtime compensation, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), for time worked as Neighborhood Office Agents ("NOAs"). Over 2,300 NOAs filed consent-to-join forms after receiving authorization from the district court. Allstate countered, arguing that the FLSA does not apply to NOAs because they are independent contractors and that, even if NOAs were employees, they were "administrative employees," exempt from the overtime regulations under the Act, 29 U.S.C. § 213(a)(1).

Under the district court's direction, each side ultimately chose three test plaintiffs for purposes of discovery and motions for summary judgment: James Cirillo, Mark Stephen Harrell, John Hogan, Leanne McCurley, Alan Pace, and Dale Villemain. Cross-motions for summary judgment were filed, and the district court granted defendant's motion for summary judgment against the six test

---

[*]Honorable Maurice M. Paul, United States District Judge for the Northern District of Florida, sitting by designation.

plaintiffs and also against the remaining 2300+ plaintiffs. We affirm on the test plaintiffs; we vacate and remand on the non-test plaintiffs.

## BACKGROUND

Allstate creates and provides to customers a variety of insurance products, including car, home, property, boat, commercial, renter's, life, and comprehensive personal liability insurance. After an insurance policy is developed, Allstate's home office in Northbrook, Illinois, reviews the rates, coverages, policy language, deductibles, and other data and adapts rates and terms to local market conditions. After receiving state approval, if necessary, the policies are available to be marketed and sold to customers.

In 1984, Allstate created the Neighborhood Office Agent program, which lasted until July 2000, when Allstate began to use a single independent-contractor program. Approximately 6500 people worked as NOAs. Each of the test plaintiffs were NOAs from December 1997 through June 2000.

NOAs were mainly managed through Agency Managers ("AMs") who were responsible for 20-25 agents within a geographical market. The AMs did not monitor the day-to-day activities of the NOAs, but the AMs did keep track of the

NOAs' sales levels. Allstate compensated the NOAs monthly, based on the prior month's recorded net premium plus a production allowance for vacations and meeting time, minus adjustments for "unearned compensation." Allstate also guaranteed a monthly minimum compensation: from December 1997 through 1998 it was $740, and it was raised to $1500 effective in January 1999. The minimum was not based on the quality or quantity of work, but rather was intended as a compensation for all work done in a given month. NOAs were paid the monthly minimum compensation amount if their compensation from net written premiums was less than the guarantee. All of the test plaintiffs' commission earnings were "significantly in excess" of the monthly minimum amount, and therefore their compensation was based on their commissions for the month.

NOAs were responsible for selecting, maintaining, and supervising their own offices. Each agent had to find his own location, lease or purchase said location, and handle the administrative aspects of the property. Allstate, however, retained the right to reject a particular location. Allstate provided the NOAs with an Office Expense Allowance ("OEA") to compensate the agents for certain approved expenses, such as rent, maintenance, utilities, clerical and solicitors

assistance, furniture and office equipment.  NOAs were allowed -- and often did -- spend more than the allotted OEA.

NOAs' chief duties were to promote and to sell Allstate's insurance products, to advise and to service customers and potential customers, and to oversee the operation of their office and staff.  NOAs supervised their staff, assigning and monitoring tasks and hours worked and providing feedback.  The largest amount of time was spent on servicing new and existing customers.  NOAs did not have unlimited discretion to act, however.  They were required to have an approved business plan and attend training sessions.  NOAs' offices had to be open for a certain number of hours each week, although NOAs set their own schedules and those of their employees.  NOAs' performances were monitored and assessed to ensure that goals were being met and policies implemented.  NOAs also had to use Allstate-approved materials, although the NOAs were able to select which materials from the approved list they wished to use.  NOAs also were able to select from the approved insurance lines the lines on which they wished to focus their selling efforts.

The average monthly compensation of the test plaintiffs between December 1997 and June 2000 were $10,210 (Cirillo); $9,650 (Harrell); $4,670 (Hogan); $4,970 (McCurley); $21,340 (Pace); and $10,510 (Villemain).  The approximate

5

annual OEA from 1997-2000 was $39,900 (Cirillo); $19,700 (Harrell); $14,400 (Hogan); and $25,300 (Villemain). Test plaintiff McCurley received an OEA of $11,454 in 1999 and $8,528 in 2000; Test plaintiff Pace received an OEA of $55,000 in 1998 and $82,000 in 1999.

## DISCUSSION

*TEST PLAINTIFFS*

We review the district court's grant of a motion for summary judgment de novo and construe all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Golden Door Jewelry Creations v. Lloyds Underwriters, 117 F.3d 1328, 1335 (11th Cir. 1997). We will assume without deciding, as the district court did, that NOAs are employees of Allstate, rather than independent contractors.[1]

---

[1] If NOAs were independent contractors, they would not fall within the scope of this statute. Although Allstate argues that the NOAs were, in fact, independent contractors, the district court found that sufficient evidence existed to make that question a disputed issue of fact (because Allstate classified the NOAs as employees for tax purposes). But, because the district court concluded that even if the NOAs were employees -- not independent contractors -- the FLSA does not apply to them, the issue was immaterial to the district court. Because we agree, we do not need to address this issue.

6

The FLSA establishes minimum labor standards to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  In other words, the statute was designed to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  Brooklyn Sav. Bank v. O'Neil, 65 S.Ct. 895, 902 n. 18, 324 U.S. 697, 707 n. 18 (1945).  One of the standards is to pay employees "engaged in commerce or in the production of commerce" overtime when an employee works more than forty hours in a week.  29 U.S.C. § 207(a)(1).  But, an exemption from the overtime pay requirement exists for employees in a "bona fide executive, administrative, or professional capacity" or "outside salesman," as defined by regulations of the Secretary.  29 U.S.C. § 213(a)(1).

Allstate argues that the insurance agents were administrative employees, exempt from the Act.  The employer carries the burden of proving the exemption, and we narrowly construe the overtime provisions of Section 207 against the employer.  Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991).

The Department of Labor's (DOL) regulations set forth the requirements for the administrative exemption. Both a "salary basis" test and a "duties" test must be satisfied.

## A. SALARY BASIS TEST

An employee is considered "paid on a salary basis" if "he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. §§ 541.118; 541.212. Appellants argue that they were not paid on a salary basis because their compensation fluctuated based on the number of policies they sold. But, as long as there is a non-deductible minimum, additional compensation on top of the non-deductible salary is permissible. See 29 C.F.R. 541.118 ("The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales."). NOAs are guaranteed a minimum level of compensation; that they are paid more, depending on their sales success, does not negate their safety net.

8

Appellants further argue that, even if we find the minimum guarantee constitutes a salary, Allstate still failed the "salary basis" test because the minimum monthly guarantee was subject to improper deductions for Allstate's office expenses. We disagree. The cases cited in support of appellants' argument all involve improper deductions based on the *quality* or *quantity* of work performed, which under C.F.R. § 541.118 means that the salary test is not satisfied. Also, Allstate did not deduct money from the NOAs for their office expenses. Instead, the agents individually decided if they wanted to expend beyond their allotted OEA and pay out of their own pocket.

The agents argue that, given that they often paid out of their own pocket because their business expenses were greater than the OEA provided, no constructive monthly minimum guarantee existed. We find this argument without merit as NOAs were not required to spend more than the OEA provides.

## B. DUTIES TEST

9

The Department of Labor (DOL) has established both a "short"[2] and a "long"[3] duties test to determine whether someone is an exempt administrative employee. 29 C.F.R. § 541.2. The short test applies when the employee is compensated on a salary basis of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa) , exclusive of board, lodging, or other facilities. 29 C.F.R. § 541.2(e)(2). The long test applies where an employee is paid less than $250 per week, but more than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities. 29 C.F.R. § 241.2(e)(1). After January 1999, NOAs were guaranteed $375 per week ($1500/month). Before that, they were guaranteed $185 per week ($740/month). Thus, we must apply both the short and long test here for the two periods.

---

[2]The short test is satisfied, in relevant part, if an employee has a primary duty consisting of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers and he uses discretion and independent judgment in his work. 29 C.F.R. § 541.2(e)(2).

[3]The long test is satisfied, in relevant part, if: an employee has a primary duty consisting of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; he customarily and regularly exercises discretion and independent judgment; he executes under only general supervision special assignments and tasks; and he spends no more than 20 percent of his hours in the workweek on activities that are non-exempt work. 29 C.F.R. § 541.2(a)-(d).

The first element of both the short and long tests requires that the plaintiffs' primary duty be office or non-manual work directly related to management policies or general business operations of Allstate or its customers. Those persons involved in "production" or in a "retail or service establishment" ("sales") are not administrative employees. See 29 C.F.R. § 541.205(a). But, 29 C.F.R. § 779.316 makes clear that transactions of an insurance company are *not* considered retail or servicing transactions for purposes of the FLSA. In addition, to satisfy the first element, persons must perform work of "substantial importance" to the management or operation of the business. 29 C.F.R. § 541.205(a).[4]

Appellants argue that they are in the "production" side of the business, and not the administrative side, and refer to themselves as "run-of-the-mine" employees, similar to "bookkeepers, secretaries, and clerks." 29 C.F.R. § 541.205(c)(1). They argue that they are not administrative employees like "so-called white-collar employees engaged in 'servicing' a business" by, for example, "promoting sales." 29 C.F.R. § 541.205(b).

---

[4]People performing work of substantial importance "include those ... who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree... ." 29 C.F.R. § 541.205(c). The regulation provides examples of positions meeting this requirement: "credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others." 29 C.F.R. § 541.205(c)(5).

11

Construing the evidence and inferences therefrom in the light most favorable to plaintiffs, test plaintiffs spent the majority of their time servicing existing customers. Their duties included promoting sales, advising customers, adapting policies to customer's needs, deciding on advertising budget and techniques, hiring and training staff, determining staff's pay, and delegating routine matters and sales to said staff. These duties are similar to administrative, rather than production, tasks. See Reich v. John Alden Life Ins. Co., 126 F.3d 1, 9-10 (1st Cir. 1997) (deciding that "production" duties involve the development of an insurance policy, not the sale of the policy itself)[5]; Wilshin v. Allstate Ins. Co., 212 F. Supp. 2d 1360 (M.D. Ga. 2002) (finding Allstate insurance agents to be administrative employees).

After reviewing the record in the light most favorable to the plaintiffs, we agree with the district court and conclude that the NOAs' tasks were of substantial importance, satisfying the requirement in 29 C.F.R. § 541.205. See also Reich, 126 F.3d at 10-13; Wilshin, 212 F.Supp. at 1377-78. Appellants' attempt to classify themselves along side messenger boys and machine operators must fail.

---

[5]Plaintiffs' arguments that the district court placed undue reliance on Reich are unpersuasive.

The second requirement of the long test is that the employee must customarily and regularly exercise discretion and independent judgment.[6] Appellants argue that NOAs did not exercise discretion and independent judgment in executing their primary job duty because "Allstate closely regulated what products the test plaintiffs sold, how they sold those products, and the manner in which they provided customer service." That NOAs' acts were subject to review, and that they did not have limitless discretion does not mean Allstate fails to satisfy this element. 29 C.F.R. § 541.207(e); Dymond v. U.S. Postal Serv., 670 F.2d 93, 96 (8th Cir. 1982) (saying that oversight does not mean that a worker is not required to use discretion and independent judgment). Given NOAs' duties, discussed above, this element is clearly met in both the short and long tests.[7]

The other two elements required for the long test have also been met here. NOAs execute special assignments and tasks under only general supervision. AMs only visit with NOAs on an average of once a month. The examples of jobs given in 29 C.F.R. § 541.201(a)(3)(ii) — brokers, advertising executives, and promotion men — are similar to NOAs, who manage their own offices with

---

[6]If the NOAs satisfy the second element in the long test, they also satisfy the second element in the short test, which only requires "work requiring the use of discretion and independent judgment." 29 C.F.R. § 541.2(e)(2).

[7]The short test only has two elements, both of which have been satisfied. So at this point, summary judgment is appropriate for any claims postdating January 1999.

13

minimal interference from Allstate. The fourth element requires that employees spend at least 80 percent of their time on exempt administrative tasks, or on non-exempt activities that are "directly and closely related" to exempt administrative activities. Again, while "sales" is not considered an administrative activity in the context of a retail or service establishment, the regulations state that insurance companies are not retail or service establishments within the meaning of the FLSA. Appellants' testimony shows that they spent nearly all their time on exempt administrative activities.

We conclude that the test plaintiffs were administrative employees, exempt from the Act, and are not entitled to overtime.[8]

*REMAINING PLAINTIFFS*

---

[8]Plaintiffs also argue that the district court did not give proper consideration to Department of Labor ("DOL") Opinion Letters, particularly a 1998 letter which said that "[b]ased on the information provided," State licensed insurance agents were nonexempt employees. 1998 WL 1147735. The letter cautioned that the opinion "is based exclusively on the facts and circumstances described in [the] request. . . . Existence of any other factual or historical background not contained in [the] request might require a different conclusion than the one expressed herein." DOL Opinion Letters should be considered and given due deference, but they are persuasive authority only -- not binding. See Arriaga v. Florida Pac. Farms, L.L.C., 305 F.3d 1228, 1238-39 (11th Cir. 2002). We have considered the letters but still conclude that the test plaintiffs were exempt administrative employees.

The district court granted defendant's motion for summary judgment against not only the test plaintiffs, but against all plaintiffs. Because the district court only gave notice per Rule 56(c) to the test plaintiffs, and such notice is an important safeguard, we vacate the grant of defendant's motion of summary judgment on the remaining opt-in plaintiffs and remand.[9]

Although the district court's briefing order for Allstate's Rule 56 motion only referred to the test plaintiffs, the district court, in granting summary judgment in favor of Allstate, denied all pending motions as moot and directed the clerk to close the file. Upon a request for clarification by plaintiffs in their Motion for Reconsideration, the district court stated that all plaintiffs were affected by the summary judgment order -- not just the test plaintiffs. The district court determined that, because plaintiffs said they were similarly-situated and each plaintiff signed a Consent-to-Join form agreeing to be bound by any adjudication of the court, all plaintiffs were bound by the summary judgment order.

Fed.R.Civ.P. 56(c) requires a minimum 10-day notice before the hearing so that the parties have the opportunity to present to the court the best case they have in support of their position. Notice must be explicitly given to *all* litigants. This important safeguard is strictly enforced in our Circuit because of the big

---

[9]We make no comment on the merits of the remaining plaintiffs' claims.

15

consequence of a case being disposed of at the summary judgment stage: it is a final adjudication on the merits. See Massey v. Congress Life Ins. Co., 116 F.3d 1414, 1417-18 (11th Cir. 1997); National Fire Ins. v. Bartolazo, 27 F.3d 518, 520 (11th Cir. 1994); Griffith v. Wainwright, 772 F.2d 822, 824-25 (11th Cir. 1985); and Finn v. Gunter, 722 F.2d 711, 712-13 (11th Cir. 1984).

If the district court had explicitly notified all plaintiffs that, should the test plaintiffs lose at the summary judgment stage, so would the remaining opt-in plaintiffs, that would have been sufficient notice. We vacate the grant of summary judgment on the opt-in plaintiffs and remand for further consideration.

AFFIRMED in part; VACATED and REMANDED in part.