[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2010
JOHN LEY
CLERK

No. 09-16024
Non-Argument Calendar

_____

D. C. Docket No. 08-00838-CV-T-17-EAJ

BRIAN ROCK,

Plaintiff-Appellant,

versus

RAY ANTHONY INTERNATIONAL, LLC,

Defendant,

SUNBELT CRANES, CONSTRUCTION
& HAULING, INC.,
d.b.a. Ray Anthony International,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 26, 2010)

Before BIRCH, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

In this appeal, we consider whether a salaried dispatcher for a crane rental company qualifies under the administrative exemption to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(1). The answer to this question matters because it determines whether the dispatcher is entitled to overtime pay under the provisions of 29 U.S.C. § 207(a)(2). The district court's factual findings were not clearly erroneous, so we affirm that court's decision exempting the dispatcher from overtime pay.

I.

Brian Rock was employed in several different capacities by Sunbelt Cranes, Construction, & Hauling, Inc. ("Sunbelt") from 1999 until 2008.[1] At the end of his employment with Sunbelt, Rock was a dispatcher in the crane rental division. He voluntarily resigned in 2008 and brought this action against Sunbelt under the FLSA for unpaid overtime compensation and for liquidated damages. Sunbelt responded that Rock was exempt from the FLSA and thus was not eligible for overtime pay. Following a bench trial, the district court entered judgment in favor of Sunbelt, finding that Rock was an administrative employee under the FLSA, and

---

[1] Although Sunbelt was acquired by Ray Anthony International, LLC in July 2007, it continued to operate under the Sunbelt name.

thus was not entitled to recover overtime pay or liquidated damages. This appeal followed.

## II.

We review de novo the district court's conclusions of law and its factual findings for clear error. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713, 106 S. Ct. 1527, 1529 (1986); Renteria-Marin v. Ag-Mart Produce, Inc., 537 F.3d 1321, 1324 (11th Cir. 2008). Factual findings are clearly erroneous "if the record lacks substantial evidence to support it so that our review of the entire record leaves us with the definite and firm conviction that a mistake has been committed." Reich v. Dep't of Conservation and Natural Res., 28 F.3d 1076, 1082 (11th Cir. 1994) (internal quotations omitted). This is a highly deferential standard of review, and this Court will only disturb the district court's factual findings where, "after making all credibility choices in favor of the fact-finder and reviewing the record as a whole, it is clear that a mistake has been made." CFTC v. Gibralter Monetary Corp., 575 F.3d 1180, 1186 (11th Cir. 2009).

Whether certain activities exclude an employee from FLSA overtime benefits is a question of law and is reviewed de novo. Icicle Seafoods, 475 U.S. at 714, 106 S. Ct. at 1530; Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124 (9th Cir. 2002).

3

III.

The FLSA was enacted in 1938 to "'aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004) (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 n.18, 65 S. Ct. 895, 902 n.18 (1945)).  To further the goals of protecting employees from abusive labor practices, Congress set federal standards regarding minimum wages and child labor, and established a forty-hour workweek.

There are provisions for a workweek beyond the forty hours set by the statute.  If an employee works more than forty hours in a week, the employee must be compensated at least time-and-a-half for each hour over forty.  29 U.S.C. § 207(a)(2).  However, if the employee works in a "bona fide executive, administrative, or professional capacity," then the overtime pay requirements do not apply.  Id. § 213(a)(1).  For the administrative exemption to apply, an employee must (1) earn no less than $455 per week, (2) have primary duties that involve "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) exercise "discretion and independent judgment with respect to

4

matters of significance" in performing his primary duties. 29 C.F.R. § 541.200(a)(1)–(3).

The employer bears the burden of proving that an employee is exempt from overtime payments. Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991). FLSA provisions are to be interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer. See Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992).

In this case, the district court determined that Rock met the three requirements for an administrative exemption, so he was not entitled to overtime pay under the FLSA. See Rock v. Sunbelt Cranes, Constr. & Hauling, Inc., 678 F. Supp. 2d 1264, 1270–74 (M.D. Fla. 2009). The parties do not dispute that Rock worked in excess of forty hours each week and that his salary exceeded $455 per week. For that reason, we go directly to the question of whether Rock's duties satisfied the remaining requirements for application of the administrative exemption.

## A.

The second prong of the administrative exemption test asks whether an employee's primary duties directly relate to "the management or general business operations of the employer or the employer's customers." 29 C.F.R. §

541.200(a)(2).  To meet this requirement, the employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  Id. § 541.201(a).

The district court found that Rock's primary job duties included customer communication, choosing the appropriate crane for specific jobs, assigning operators to cranes, overseeing other employees, preparing and reviewing job tickets, and maintaining the crane rental schedule.  Rock, 678 F. Supp. 2d at 1266. He was also responsible for selecting the type of materials, supplies, machinery, equipment, and tools that were needed to meet the customers' needs.  Id. at 1268–69.  In essence, the district court concluded that Rock effectively managed Sunbelt's crane rental department, which the district court found was "the heart of Sunbelt's business" and necessary to Sunbelt's business operations.[2]  Id. at 1268, 1271.  Because his primary duties related to servicing or running Sunbelt's general business operations, the district court concluded that Rock's work qualified him for

---

[2] We recognize that certain of these factual findings were made in discussing whether a different exemption to the FLSA's overtime requirements applied.  Nevertheless, the district court's opinion makes clear that it considered the whole of Rock's duties in concluding that the second prong of the administrative exemption test was satisfied.  See Rock, 678 F. Supp. 2d. at 1271 (explaining that "Mr. Rock's maintenance of the schedule and Mr. Rock's other responsibilities combined were necessary and of the type that every crane rental business must undertake in order to operate" and concluding that "[Sunbelt] has clearly established that [Rock's] primary duties were directly related to the servicing or running of Sunbelt's business operations").

6

the second prong of the administrative exemption from overtime pay.[3]

Rock maintains that his position was more akin to sales and retail, and is therefore outside the scope of the second prong. He relies on recent Department of Labor guidance clarifying whether an employee's job duties relate primarily to production or administration for purposes of the second prong of the administrative exemption test.[4] According to this new guidance, the essence of the second prong's focus on "general business operations" is to separate production from administration. See Wage and Hour Division, U.S. Dep't of Labor, Administrator's Interpretation No. 2010-1, at 3 (Mar. 24, 2010), available at http://www.dol.gov/whd/opinion/adminIntrprtn/FLSA/2010/FLSAAI2010_1.pdf. Production work relates to the goods and services that the business contributes to the marketplace, whereas administration relates to running the business. Id. Certain inside

---

[3] The district court also found that Rock knew when he accepted his promotion to dispatcher that he would be receiving a salary, that he would no longer be eligible for overtime benefits, that he believed $55,000 was fair compensation for the work he would be doing and that he did not try to negotiate a higher salary or better hours. See Rock, 678 F. Supp. 2d. at 1266. We agree with Rock that none of this is relevant. As Rock correctly points out, FLSA rights cannot be waived. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740, 101 S. Ct. 1437, 1444–45 (1981).

[4] Although the guidance specifically addresses mortgage loan officers, the agency's interpretation of its regulation is nonetheless helpful to our review. This guidance is not binding law, but courts owe some deference to administrative guidance document where it is consistent with the agency's statutory mandate. See Warshauer v. Solis, 577 F.3d 1330, 1335 (11th Cir. 2009) ("an agency's interpretive guidance construing a statute is entitled to deference 'proportional to its power to persuade'" (quoting United States v. Mead Corp., 533 U.S. 218, 235, 121 S. Ct. 2164, 2176 (2001)).

salespeople might be considered production personnel, rather than administrative personnel, if the primary purpose of the business is to sell products. Id. at 3, 6. Rock says his role in crane rental is akin to selling products and thus beyond the scope of the administrative exemption.

While Rock did engage in the kind of "sales" described in the Department of Labor's recent guidance, the district court found that his primary duties went beyond mere sales. Given "the amount of time Mr. Rock spent on . . . managerial duties, it is determined that Mr. Rock's primary duty . . . was the 'management' of Sunbelt's crane rental division." Rock, 678 F. Supp. 2d at 1269. The district court's finding is consistent with our decision in Hogan, in which we concluded that even when employees engage in sales, their duties are administrative if the majority of their time is spent advising customers, hiring and training staff, determining staff pay, and delegating matters to staff.[5] Hogan, 361 F.3d at 627. For these reasons, the district court properly concluded that Rock met the second prong of the administrative exemption test.

_____

[5] The guidance document Rock relies upon was issued after the district court's decision and therefore was not addressed by the court below. Nevertheless, it is clear the district court found Rock to be primarily a manager with duties that far exceeded those of a mere inside salesperson. Even if this Court were to agree with Rock that his primary duties were more akin to sales than to management, that is a factual determination and the district court's contrary conclusion was not clearly erroneous.

B.

The third prong of the administrative exemption test looks to whether the employee's primary duties involve "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). Courts must determine whether the employee's job "involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." Id. § 541.202(a). The ultimate question is whether the employee has the ability "to make an independent choice, free from immediate direction or supervision." Id. § 541.202(c). Although there is no requirement that the employee operate free from oversight, see id., the employee's duties must involve "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." Id. § 541.202(e).

The Department of Labor's Field Operations Handbook offers guidance as to whether dispatchers exercise sufficient discretion such that the administrative exemption should apply. See Wage and Hour Division, U.S. Dep't of Labor, Field Operations Handbook § 22d04 (1994). Dispatchers, such as those in the bus and trucking industry, who merely "apply their knowledge in following prescribed procedures and techniques [do] not exercis[e] discretion and independent judgment

9

within the meaning" of the regulation.  Id. § 22d04(a).  However, a dispatcher may exercise discretion and independent judgment where, for example, the dispatcher coordinates the movement of company vehicles and equipment over non-standard routes or handles emergency situations.  See id. § 22d04(b).

The district court determined that Rock exercised discretion and independent judgment, finding that he was "responsible for directing and overseeing all operators, truck drivers, riggers, oilers, and erection crews."  Rock, 678 F. Supp. 2d at 1272.  The court further found that he exercised discretion "as to which customers' jobs each employee should be assigned and what equipment is required to perform the job properly."  Id.  The court found that he exercised independent judgment in deciding "which employees to send, and where to send them, based on the employees' experience and reliability."  Id.  The court also found that Rock had to exercise independent judgment in the event of an emergency as he was "the first line of communication" and had to determine how best "to resolve the conflict and ensure that the customer's needs were being met despite such emergency."  Id.  Rock, in the district court's view, required neither input nor approval when making these decisions.  Id.  The district court further found that Rock had supervisory authority to hire and fire employees, even though he never exercised that authority.  Id.  Finally, the district court was persuaded that maintaining the schedule required

10

a level of skill that went beyond "'applying well-established techniques, procedures, or specific standards described in manuals or other sources.'" Id. (quoting 29 C.F.R. § 541.200(e)).

To be sure, evidence exists that Rock's position did not require the exercise of judgment or discretion. Rock testified that he only priced certain types of cranes based on his own experience and the information in the load charts and that the vast majority of his tasks simply involved the mechanical application of data from load charts. This testimony was corroborated by his former supervisor, who testified that the job is very simple once the dispatcher understands how to use the load charts. For about seven out of the company's fifty cranes, Rock could quote a price to the customer; for all others, he had to hand the project off to a salesman. Rock testified that he never resolved customer complaints, but rather simply forwarded any complaints and problems to his supervisor. There is further evidence, substantiated by his former supervisor, that Rock had little to no role in hiring, firing, promoting, or disciplining employees.

Still, the record supports the district court's conclusion that Rock exercised substantial control over the day-to-day operation of Sunbelt's crane rental business. Patrick Gunn, a crane rental company dispatcher, testified that dispatchers ensure that crews get to where they are going with the right equipment. Dispatchers are in

11

a superior position to crane operators and crane operators report to dispatchers. Dispatchers find work to keep the crew busy if they are not out on a job. Dispatchers, according to Mr. Gunn, have wide authority to resolve problems related to accidents and breakdowns, to hire and fire employees, and to set pay. Mr. Gunn also testified that load charts do not indicate every factor that must be considered in selecting a crane, so a dispatcher must consider factors such as ground conditions, curbing, and other physical conditions.

Although reasonable minds could differ about the degree of discretion Rock exercised as a dispatcher, sufficient evidence exists in the record to support the district court's finding that Rock exercised discretion and independent judgment. District courts are in a better position to judge the credibility of witnesses, and they have more experience in making factual determinations. See Anderson v. City of Bessemer City, 470 U.S. 564, 574–75, 105 S. Ct. 1504, 1512 (1985). And where two plausible views of the evidence exist, we will defer to the district court unless clear error is apparent. See Gibralter Monetary Corp., 575 F.3d at 1186. There is no clear error here, and in view of factual findings made by the district court, it properly concluded that Rock satisfied the third prong of the administrative exemption test. Based on this record, the district court correctly concluded that Rock is not entitled to overtime pay under the FLSA.

12

IV.

Rock also challenges the district court's denial of liquidated damages. Because we affirm the district court's decision that Rock is not entitled to overtime pay, he suffered no actual damages, and as such is not entitled to liquidated damages. See Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1272 (11th Cir. 2008) (the FLSA authorizes an award liquidated damages that are equal in amount to actual damages).

The judgment of the district court is AFFIRMED.