[Cite as *Clark v. Brantell*, 2016-Ohio-718.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| April L. Clark, R.N., | : | |
| Plantiff-Appellant, | : | |
| Sarah M. Brantell, L.P.N., | : | |
| Plaintiff-Appellee, | : | No. 15AP-597 |
| | | (Ct. of Cl. No. 2014-00584) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| Ohio Department of Rehabilitation and Correction, | : | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on February 25, 2016

**On brief:** *Marshall and Morrow, LLC, Edward R. Forman, Samuel M. Schlein,* and *John S. Marshall*, for appellant. **Argued:** *Edward R. Forman*

**On brief:** *Michael DeWine*, Attorney General, *Randall Knutti, Emily Simmons Tapocsi, Christopher L. Bagi, Sloan Spalding*, and *Robert Fekete*, for Ohio Department of Rehabilitation and Correction. **Argued:** *Sloan T. Spalding*

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, April L. Clark, R.N., appeals from a judgment of the Court of Claims of Ohio granting partial summary judgment in favor of defendant-appellee, the Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm.

## I.  Facts and Procedural History

{¶ 2}   The two named plaintiffs in this case are Clark, a registered nurse ("RN"), and Sarah M. Brantell, a licensed practical nurse ("LPN").  Both are employed by ODRC to provide inmate and staff medical care.  They began this action on behalf of themselves and similarly situated individuals with a collective action complaint alleging a willful failure to compensate hourly employees with overtime pay, a violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. 201  et seq.  The complaint alleges ODRC "directed, suffered and/or permitted" nurses to arrive ten minutes before the start of their eight-hour shifts while providing no pay for the extra time.  (Complaint, ¶ 6, 8.)  Clark asserts that ODRC work rules impose this "transitional time" to allow incoming nurses to consult with departing nurses on the previous shift, jointly count medication and needles, and otherwise ensure continuity of care for patients.

{¶ 3}   ODRC filed a motion for partial summary judgment addressing only the claims of Clark and similarly situated RNs.  ODRC argued that these employees were "learned professionals" paid on a salary basis, thereby falling under an overtime exemption in the FLSA.  Clark responded by asserting that there remained a genuine issue of material fact on the question of whether her employee category is paid on a salary basis and therefore eligible for the overtime exemption for learned professionals.  The Court of Claims agreed with ODRC and granted partial summary judgment as to Clark's claims.  Clark filed a premature notice of appeal, then requested that the Court of Claims amend its judgment nunc pro tunc to make it immediately appealable through the addition of Civ.R. 54(B) language.  The appeal is now properly before this court.

## II.  Assignments of Error

{¶ 4}   Clark raises the following assignments of error for our review:

> 1. In granting summary judgment, the court of claims erred by shunting to the merits unrebutted evidence that hours — up to 10 minutes before and 10 minutes after each scheduled shift registered nurses spent on performing required duties during their continuous work day — were omitted from their salary and thus precluded the department from satisfying the requirement in the Fair Labor Standards Act exception for learned professionals that they be paid a "predetermined amount" on a "salary basis" which is not reduced due to variation in the quality or quantity of work.

2. In granting summary judgment, the court of claims erred by disregarding the functional equivalence of reducing a salary due to variation in the quality or quantity of work to the department's practice of avoiding overtime for up to 10 minutes before and 10 minutes after each scheduled shift even though that practice omitted from salary the time actually expended in the performance of required duties based on the department's implicit perception that brief transitional work between shifts lacked the requisite quality or quantity to deserve to be paid.

## III. Standard of Review and Applicable Law

{¶ 5} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 6} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 7} All parties to the case agree that the FLSA and accompanying federal regulations provide the governing law. The FLSA requires employers to pay overtime compensation for work performed in excess of 40 hours per week. 29 U.S.C. 207(a)(1); *Johnson v. Ohio Dept. of Youth Servs.*, 96 Ohio St.3d 161, 2002-Ohio-4010, ¶ 7. Ohio defers to federal regulations and applicable federal case law for determination of eligibility for overtime compensation. *Briscoe v. Columbus Metro. Area Community Action Org.*, 10th Dist. No. 81AP-887 (Mar. 9, 1982). An employee bringing an action under the FLSA for unpaid overtime bears the burden of demonstrating that he or she performed uncompensated work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946). To prove the FLSA claim, the plaintiff must produce sufficient evidence to show the amount and extent of the work and resulting unpaid compensation. *Id.* at 687-88.

{¶ 8} Here, the evidentiary burden shifted for summary judgment purposes to the defendant employer because ODRC claims an exemption to the general FLSA overtime requirement: procedurally, these exemptions are raised by the employer as an affirmative defense. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974). Such exemptions will be narrowly construed against the employer, who must demonstrate by clear and affirmative evidence that the employee is covered by the exemption. *White v. Murtis M. Taylor Multi-Serv. Ctr.*, 188 Ohio App.3d 409, 2010-Ohio-2602, ¶ 12 (8th Dist.). "The manner in which an employee spends his time is a question of fact, while the determination whether his duties fall within an exemption is a question of law." *Id.*, citing *Jastremski v. Safeco Ins. Cos.*, 243 F.Supp.2d 743, 747 (N.D.Ohio 2003). The apparent heightened burden imposed on the employer by the above "clear and affirmative" language, however, does not bring with it any heightened evidentiary burden when considering a motion for summary judgment. *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir.2007).

{¶ 9} The FLSA provides an overtime exemption for "bona fide executive, administrative, or professional" positions. 29 U.S.C. 213(a)(1); *Johnson* at ¶ 11. The act itself does not define these terms, but the applicable regulations explain each category. *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558-59 (2d Cir .2012). Specifically, ODRC here invokes the "learned professional" exemption applicable to employees with specialized skills and training. To qualify, an employee must satisfy a two-prong test.

*Powell v. Am. Red Cross*, 518 F.Supp.2d 24, 38 (D.D.C.Cir.2007). First, the employee must be compensated "on a salary or fee basis at a rate of not less than $455 per week." 29 C.F.R. 541.300(a)(1). Second, the employee's primary duties must require performance of work demanding knowledge of an advanced type in a field of science or learning "customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. 541.301 (a)(3).

{¶ 10} These federal regulations expressly anticipate that "[r]egistered nurses who are registered by the appropriate State examining board generally [will] meet the duties requirements for the learned professional exemption." 29 C.F.R. 541.301(e)(2). The parties accordingly agree that Clark and similarly situated RNs employed with ODRC satisfy the "primary duty" prong of the above test by virtue of their advanced education and specialized knowledge. The dispute lies in whether Clark is a "salaried" employee in order to meet the remaining prong of the test.

## IV. Discussion

{¶ 11} Because Clark did not provide separate arguments for each assignment of error and because both assignments relate to whether Clark was a salaried employee under the learned professional exemption under the FLSA, we will address them together.

{¶ 12} "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. 541.602(a). The term "predetermined" means that the employee is guaranteed a certain amount of hours to work and the corresponding salary paid on a regular basis. Any variation or reduction from such a predetermined amount must be caused by the actions of the employee, not the employer; i.e., the employer may not deny the regular salary on the simple basis of lack of work to offer the employee. 29 C.F.R. 541.602(a); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir.1997). Earnings "may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement." 29 C.F.R. 541.604(b); *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768-69 (6th Cir.2006) (Salary test may be satisfied even where employer uses an hourly payroll system based on a

guaranteed 40-hour work week.); *Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 523 (S.D.N.Y.2013). The purpose of the salary basis test is to distinguish "true" executive, administrative, or professional employees from non-exempt employees, i.e., employees who may be disciplined "by piecemeal deductions from * * * pay." *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir.2000), quoting *Aur v. Robbins*, 519 U.S. 452, 456 (1997).

{¶ 13} The salary basis test does not deprive employers of all flexibility in adjusting pay either upward or downward: "[T]he exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal work week. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off." 29 C.F.R. 541.604(a); *see generally Anani v. CVS Rx Servs., Inc.*, 788 F.Supp.2d 55, 61-62 (E.D.N.Y.2011), *aff'd* 730 F.3d 146 (2d Cir.2013). Conversely, a public employer that follows "principles of public accountability" may reduce pay on an hourly basis for absences of less than a full day. 29 C.F.R. 541.710(a). "Public accountability is the notion that 'governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for expenditure of public funds.' " *Serv. Emps. Internatl. Union, Local 102 v. Cty. of San Diego*, 60 F.3d 1346, 1352 (9th Cir.1994), fn. 2, quoting *Hilbert v. Dist. of Columbia*, 23 F.3d 429, 435 (D.C.Cir.1994); *see also Worley v. Cincinnati*, 1st Dist. No. C-990506 (Aug. 25, 2000). Under the public accountability principle, an employee who does not work all or part of a scheduled shift and does not take corresponding leave time for such an absence is responsible for the resulting reduction in wages without compromising his or her salaried status. *Cooney v. Chicago*, 644 F.Supp.2d 1061 (N.D.Ill. 2009).

{¶ 14} For purposes of summary judgment, the facts to which we apply these standards are straightforward. ODRC employs Clark in a position classified as "Nurse I" under the terms of a Collective Bargaining Agreement ("CBA") governing multiple state agencies and employee categories. The Nurse I position requires licensure and registration as a professional nurse and a two-year education in the field. Nurse I is classified as a full-time employee under the CBA, working 40 hours per week and 2,080

hours per calendar year. The full-time rate of pay for any pay step in the position substantially exceeds $455 per week.

{¶ 15} Under the CBA, "[t]he standard work week for full-time employees shall be forty (40) hours exclusive of time allotted for unpaid meal periods." (Defendant exhibit C, CBA, Section 24.01.) Section 43.07 of the CBA provides that "[e]mployees who report to work as scheduled and are then informed that they are not needed or who are called at home by the Employer and told not to report to their regularly scheduled work day shall receive their full day's pay at regular rate." (Defendant exhibit C, CBA, Section 43.07.) A CBA memorandum addition covering ODRC personnel addresses overtime allocation and bidding, but does not specifically define overtime or address the transitional time that gives rise to Clark's claims. This memorandum does state that "overtime procedures for nurses will be established at the local institutional level by the Employer." (Defendant exhibit C, CBA, 238.) ODRC supplements the CBA with a "Payroll and Timekeeping Policy" promulgated pursuant to the department director's authority granted by R.C. 5120.01. This policy does not explicitly address transitional time for nurses. The timekeeping policy prohibits "bargaining unit and FLSA overtime eligible employees" from clocking in more than ten minutes before the start of a scheduled shift, or clocking out more than ten minutes after the end of a scheduled shift, without supervisor authorization. (Defendant exhibit E, Timekeeping Policy VI(C)(1)(b).) The policy also explains the department's public accountability practices: "An employee's pay shall be reduced, or such employee shall be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by the employee." (Defendant exhibit E, Timekeeping Policy VI(F)(2).)

{¶ 16} Neither of these documents establishes ODRC's practice of *requiring* nurses to clock in early to cover transitional time. Clark introduced evidence of the transitional arrival-time policy through her own affidavit, stating that she was "required * * * to arrive approximately ten minutes prior to the start of each scheduled shift [and] typically not paid for this time." (Nov. 14, 2015 Clark Affidavit, ¶ 4, 7.) Neither her affidavit nor any other evidence in the record reflects a comparable compulsory requirement to hold over for transitional time *after* a shift.

{¶ 17} In practice, the undisputed pay records submitted by Clark establish that when she worked a full shift as scheduled, Clark clocked in between ten and zero minutes before the shift start time. Holdovers after the shift-end time also occurred but were less common. Consistent with her assertions, the records generally (but not always) reflect that she received no pay for the ten minutes preceding or following her regular shift. Under no circumstances, however, was Clark docked pay if she failed to appear the required ten minutes in advance of her shift; on most days, in fact, she seems to have clocked in and out within a minute or two of her shift times with no impact on pay.

{¶ 18} Clark asserts two bases for finding that she was not a salaried employee. First, Clark argues that her pay varied from pay period to pay period because the hours she worked varied considerably, thereby reducing or increasing her pay well above or below her nominal weekly wage based on a 40-hour week. For some pay periods, her weekly pay even fell below the $455-per-week minimum for the FLSA salaried employee test. This volatility, she argues, is not typical of salaried employment. Second, Clark argues that ODRC, by avoiding overtime for up to ten minutes before and ten minutes after each scheduled shift, created the functional equivalent of a variation in pay based on quality or quantity of work and removed her from salaried status.

## A. Wide Variety of Weekly Pay

{¶ 19} With respect to the fluctuations in Clark's gross pay from paycheck to paycheck, ODRC does not dispute that such variations were substantial and that her pay sometimes fell below the $455-per-week threshold. However, as ODRC explains, and the evidence supports, these variations were due either to unpaid absences voluntarily undertaken by Clark, or authorized overtime that caused her to receive a considerable amount over her base salary. We agree with the Court of Claims that these fluctuations were not caused by "variations in the quality or quantity of the work performed." 29 C.F.R. 541.602(a). They were, rather, the result of proper application of ODRC's right to invoke the "public accountability" principle to avoid compensating employees for time not worked *on the employee's initiative* and to in turn pay an otherwise-exempt employee discretionary overtime pursuant to the CBA. There is no evidence that ODRC denied Clark any part of her regular salary on the simple basis of lack of work to offer her. *Douglas.* The payroll records indicate that ODRC complied with its obligation under the

CBA to pay Clark for a scheduled shift when she was present and ready to work. In sum, we agree with the Court of Claims that these variations in weekly pay did not of themselves remove Clark from salaried status and we overrule Clark's first assignment of error.

### B. Overtime Policy

{¶ 20} We now address Clark's argument that the overtime policy operated to reduce her compensation based on quantity or quality thereby removing Clark from salaried status. The essence of salaried employment is the presence of fixed pay for a variable duration of work. The variations complained of in relation to the overtime policy are not variations in *pay* based on the quantity or quality of work, but, to the contrary, variations in *work* (within a narrow range) resulting in *no* variation in pay. Salaried employees and employers are not limited to a uniform 40-hour work week in exchange for their stated salary. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1189 (10th Cir.2015) (50-hour baseline work week was consistent with FLSA salaried employment, and employer had no history of making improper deductions for shorter work weeks). Once a salaried employee is guaranteed pay for her scheduled shifts on a full-time basis, variation of the standard work week above the minimum requirement does not affect salaried status. *Id.* The most important factor remains the presence of a nondeductible minimum salary. *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir.2004).

{¶ 21} In the present case, the working conditions spelled out in ODRC's time-keeping policy amount to a full-time work day comprised of a shift of between 8 hours and 8 hours and 20 minutes. Any time worked at or above 40 hours satisfied ODRC's obligation to offer its salaried staff full-time pay when such employees were willing and able to appear for scheduled shifts. The fact that outside of the maximum 20-minute range Clark either lost pay or gained overtime benefits does not affect the baseline premise that as a salaried employee she was not guaranteed pay that varied directly with her time on the job. The FLSA and attendant regulations permitted the deductions under the public accountability policy and, under the CBA, ODRC had agreed to partially waive the overtime exemption to which it was otherwise entitled for RNs. The fact that ODRC as an employer had bargained away much of the overtime exemption does not mean that it

lost the right to retain some residue of it in practice.  We therefore overrule Clark's second assignment of error.

{¶ 22} We find Clark and similarly situated RNs were learned professionals and remained both professionally qualified and salaried employees under these conditions. Therefore, the Court of Claims correctly concluded that there remains no genuine issue of material fact regarding the applicability of the FLSA learned professional overtime exemption.

## V.  Conclusion

{¶ 23}  Based on the foregoing reasons, the Court of Claims did not err in granting ODRC's motion for summary judgment.  Having overruled Clark's two assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.

BRUNNER, J., concurring.

{¶ 24} I concur with the decision of the majority affirming the judgment of the Court of Claims granting summary judgment to the Ohio Department of Rehabilitation and Correction ("ODRC") with regard to plaintiff-appellant Clark's claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. 201 et seq. There is no genuine issue of material fact that Clark was subject to the FLSA learned professional overtime exemption.

{¶ 25} I believe it is important to acknowledge, however, that the record indicates that ODRC failed to compensate Clark for the time she performed primary duties of her job after she clocked in but before her shift started, and before she clocked out but after her shift had ended, and this violated the Collective Bargaining Agreement ("CBA").

{¶ 26} Section 24.02 of the CBA, "Rate of Overtime Pay," provides that "[e]mployees shall receive compensatory time or overtime pay for authorized work performed in excess of forty (40) hours per week."

{¶ 27} Division (A) of Section 24.04, "Overtime and Compensatory Time," sets forth how overtime work shall be compensated, as follows:

> Hours in an active pay status in excess of forty (40) hours in any calendar week shall be compensated at the rate of one and one-half (1 1/2) times the total rate of pay, as defined by Section 43.01, for each hour of such time. Total rate of pay includes the base rate plus longevity, all applicable supplements, and shift differential where applicable.

{¶ 28} Because Clark did not plead or argue a violation of the CBA, we are unable to review the Court of Claims' decision on this matter through that lens. Accordingly, I concur with the decision of the majority.

———————————