Salah ANANI, Individually and on Behalf of All Other Persons Similarly Situated, Plaintiff,

v.

CVS RX SERVICES, INC., Defendant.

No. 09–CV–5535 (ADS)(AKT).

United States District Court,
E.D. New York.

May 23, 2011.

---

Klafter Olsen & Lesser LLP by Jeffrey A. Klafter, Esq., Seth R. Lesser, Esq., Fran L. Rudich, Esq., Lana Koroleva, Esq., Of Counsel, Rye Brook, NY, Berger & Associates by Bradley I. Berger, Esq., Of Counsel, New York, NY, for Plaintiff.

Jackson Lewis, LLP by Felice B. Ekelman, Esq., Of Counsel, New York, NY, Ashe Rafuse & Hill LLP by Nancy Rafuse, Esq., James J. Swartz, Esq., Kristy G. Offitt, Esq., Of Counsel, Atlanta, GA, for Defendant.

**MEMORANDUM OF DECISION AND ORDER**

SPATT, District Judge.

Salah Anani ("Anani" or "the Plaintiff") commenced this action on behalf of himself and other similarly situated individuals against CVS RX Services, Inc. ("CVS" or "the Defendant") seeking unpaid overtime compensation pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law §§ 650 et seq. ("Labor Law"). Presently before the Court is the Defendant's motion for summary judgment dismissing the complaint pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the Defendant's motion is granted.

## I. BACKGROUND

Defendant CVS RX Services, Inc. is a pharmacy retail store that operates more than 5,000 stores nationwide. From November 2003 until his resignation in July 2009, Salah Anani was employed as a full-time pharmacist at CVS, where he worked at a number of different CVS locations including stores in Huntington, West Islip, East Islip, Central Islip, East Hampton, and South Hampton. As set forth in the "CVS Pharmacy Payroll Policies" packet, CVS classified its pharmacists as either "bi-weekly salaried pharmacists" or "hourly pharmacists."

Beginning in November 2003, CVS hired Anani for a full-time position and classified him as a "bi-weekly salaried pharmacist." In addition to a $10,000 signing bonus, CVS agreed to pay Anani an annual base salary of $100,031 predicated on a 44 hour workweek. (*See* Def.'s 56.1 Stmt., Ex. C.) This agreement was memorialized in a letter from CVS to Anani informing him that he was considered a "salaried professional" and outlining the above terms of his compensation. (*See id.*) Over the course of his employment at CVS, Anani's guaranteed compensation ranged from $107,536 to $145,608.32.

The payment policy for bi-weekly salaried pharmacists was set forth in the CVS Pharmacy Payroll Policies packet, which stated that the "[b]ase salary is a **guaranteed minimum** amount" and that "[a]ll full-time Pharmacists are paid **at least** their 'base salary' every week." (Def.'s 56.1 Stmt., Ex. D at 2 (emphasis in original).) Although CVS classified full-time bi-weekly salaried pharmacists as "salaried professionals" who were exempt from receiving overtime compensation, it nevertheless offered "premium pay" as an "additional incentive and reward for Pharmacists who work extra shifts and help the company meet its service goals". (*Id.* at 10.) In order to calculate a pharmacist's premium pay, CVS determined the pharmacists "Compensation Rate" by dividing the annual salary by 52 weeks, and then the weekly salary by the pharmacists agreed upon number of "base hours." The premium pay rate per hour was the "Compensation Rate" plus $6. Although Anani's base hours were set at 44, he frequently worked between 60 and 80 hours per week. As a result, Anani received a substantial amount of premium pay, often resulting in his biweekly paychecks exceeding his "base" by 70%. (*See* Pl.'s Br. at 1; Pl.'s Counterstatement of Facts ¶¶ 9–12.)

Anani resigned from CVS on July 20, 2009, and commenced the instant action on December 18, 2009, alleging that CVS improperly classified him as a "salaried professional" and therefore he was entitled to overtime compensation at the full rate of time and a half under the Fair Labor Standards Act and the New York Labor Law. In opposition, CVS contends that, as a matter of law, Anani qualified as an exempt employee under the relevant statutes. Therefore CVS seeks summary judgment dismissing Anani's claims. Insofar as Anani stipulates to the dismissal of his New York Labor Law cause of action, and stipulates to a two year statute of limitations, the discussion below only addresses whether Anani was properly classified as an exempt employee under the FLSA from December 18, 2007 up to and including July 20, 2009.

## II. DISCUSSION

### A. *Legal Standard on Summary Judgment*

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89

L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. As to the Relevant Exemptions from the FLSA

▐ The FLSA sets minimum requirements for wage and overtime payments and prohibits employment for more than a specified number of hours per week without proper overtime compensation. 29 U.S.C. §§ 201–13. In particular, an employee who works in excess of forty hours a week must be compensated for each hour worked in excess of forty hours "at a rate not less than one and one-half times the regular rate at which he is employed." *Id.* at § 207(a)(1). However, certain employees, including those who are employed in "a bona fide executive, administrative, or professional capacity", are exempt from this overtime compensation requirement. *Id.* at § 213(a)(1). " '[B]ecause the FLSA is a remedial act, its exemptions … are to be narrowly construed,' and the burden rests on the employer to prove that a particular employee is exempt from the Act's requirements." *Havey v. Homebound Mortgage, Inc.,* 547 F.3d 158, 163 (2d Cir.2008) (quoting *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir. 1991)).

▐ The FLSA does not define the terms "executive," "administrative," or "professional" for purposes of the exemption, but directs the Secretary of Labor to do so by regulation. 29 U.S.C. § 213(a)(1). The Secretary's regulations have the force of law, and are generally given controlling weight. *See Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is … controlling unless 'plainly erroneous or inconsistent with the regulation.' ") (quoting *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989)).

On March 31, 2003, the United States Department of Labor ("DOL") published a notice with regard to a proposed set of new FLSA regulations. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 68 Fed.Reg. 15,560, 2003 WL 1617356 (Mar. 31, 2003) ("DOL Proposal"). After a 90–day comment period, the DOL revised and released its final regulations, defining the exemptions under the FLSA. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 2004 WL 865626 (Apr. 23, 2004) ("DOL Final Rules"). The new regulations became effective on August 23, 2004 (the "2004 Amendments"), and are applicable to the instant case, insofar as Anani asserts entitlement to overtime for pay periods from December 18, 2007, through and including July 20, 2009. The guidance contained in the DOL Proposal and the DOL Final Rules, as well as the guidance contained in DOL Wage & Hour Opinion Letters, "are 'entitled to respect' … to the extent that they are persuasive …" *Christensen v. Harris County,* 529 U.S. 576, 578, 120 S.Ct. 1655, 1657, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).

Here, CVS contends that Anani was not subject to the FLSA overtime requirements because he was properly classified and treated both as an exempt "professional employee", see 29 C.F.R. § 541.300, and as an exempt "highly compensated employee", see 29 C.F.R. § 541.601. In order to meet the criteria for the "professional" exemption, an employee must satisfy both a "salary basis test" and a "duties test." See 29 C.F.R. § 541.2; Auer, 519 U.S. at 455, 117 S.Ct. 905; Coleman–Edwards v. Simpson, 330 Fed.Appx. 218, 219 (2d Cir. 2009). In the instant case, there is no dispute between the parties that the Plaintiff is properly classified as a "learned professional" as defined in 29 C.F.R. § 541.301, and therefore satisfies the duties test. (See Pl.'s Br. at 8 ("Plaintiff does not dispute that he meets the duties test for the professional exemption[.]").) Rather, the main area of conflict is the satisfaction of the salary basis test, which requires that an employee be paid a "predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602 ("section 602"). In addition to the general criteria for determining whether an employee is paid on a "salary basis" in section 602, an employer may provide additional compensation that is paid on a non-salary basis without violating the salary basis test, subject to the provisions of 29 C.F.R. § 541.604 ("section 604").

CVS contends that summary judgment is appropriate because under the "highly compensated employee" exemption, the salary basis test is not applicable to a professional employee such as Anani whose total annual compensation exceeded $100,000. However, even assuming the salary basis test is applicable, CVS argues that Anani's guaranteed compensation met the requirements of the salary basis test in

section 602, and that the additional compensation did not destroy the exemption under section 604. As set forth below, the Court finds that, although the salary basis test is applicable to the highly compensated employee exemption, CVS met its burden of showing that there is no genuine issue of material fact as to whether the Anani was compensated on a "salary basis" and therefore exempt from the FLSA overtime requirements.

### C. Whether the Salary Basis Test Applies to the Highly Compensated Employee Exemption

■ The Defendant contends that it is entitled to summary judgment because where, as here, an employee is guaranteed compensation above $100,000 a year, their classification as a "professional" under the duties test is sufficient to meet the requirements of the highly compensated employee exemption. By contrast, the Plaintiff argues that, while the highly compensated employee test may lower the burden for satisfying the duties test, it still requires that the Plaintiff's compensation, regardless of salary level, meet the requirements of the salary basis test. The Court agrees.

■ As a part of the 2004 Amendments, the Secretary of Labor promulgated a new regulation exempting from the FLSA overtime requirements certain "highly compensated employees", premised on the notion that "[a] high level of compensation is a strong indicator of an employee's exempt status." 29 C.F.R. § 541.601(c). The regulation requires that, even when an employee's total annual compensation exceeds $100,000, in order to be exempt, the annual compensation "must include at least $455 per week paid on a *salary* or fee *basis*." 29 C.F.R. § 541.601(b) (emphasis added). The phrase "salary basis" is a

term of art as defined in the FLSA regulations. *See* 29 C.F.R. § 541.602. Its inclusion in a regulation applicable to the FLSA exemption for bona fide executive, administrative and professional employees is consistent with "[t]he purpose of the salary basis test ... to distinguish 'true' executive, administrative, or professional employees from non-exempt employees, *i.e.,* employees who may be disciplined 'by piecemeal deductions from ... pay.'" *Yourman v. Giuliani,* 229 F.3d 124, 130 (2d Cir.2000) (quoting *Auer,* 519 U.S. at 456, 117 S.Ct. 905, 137 L.Ed.2d 79) (alteration in original). As the DOL explained in its discussion of the final regulations, the decision to include a salary basis component to the total annual compensation threshold of $100,000 was intentional because "the salary basis requirement is a valuable and easily applied criterion that is the hallmark of exempt status." DOL Final Rules, 69 Fed.Reg. at 22,175.

Furthermore, requiring that a highly compensated worker, and a pharmacist in particular, be paid at least in part on a salary basis is consistent with well-established case law holding that "employees are not to be deprived of the benefits of the Act simply because they are well paid". *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America,* 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945). It is also consistent with the regulations themselves, which specifically exclude "pharmacists" from the group of medical professionals that are exempt from the salary basis requirement. *See* 29 C.F.R. § 541.304; *see also* DOL Final Rules, 69 Fed.Reg. at 22217 ("[C]urrent section 541.301(e)(1) has long recognized that registered nurses and pharmacists perform exempt duties (and whether they are, in fact, exempt turns on whether they are paid on a salary basis)."); *Id.* at 22,231 (noting that "76.1 percent of the Pharmacists who earn $100,000 or more per year

continue to be paid by the hour (and eligible for overtime) despite the fact the current regulations classify them as performing exempt professional duties").

Thus, the fact that the Plaintiff was a "professional" whose compensation exceeded $100,000 each year of his employment does not in and of itself exempt him from the FLSA overtime requirements. Accordingly, the Defendant must show that the Plaintiff received at least $455 per week on a "salary basis" in order to meet its burden of establishing that the Plaintiff was exempt from the FLSA overtime requirements.

**D. As to the Salary Basis Requirements**

■ Where, as here, a professional employee's total compensation involves a combination of guaranteed and non-guaranteed payments, the compensation scheme must also be analyzed under both 29 C.F.R. § 541.602, which sets forth the "salary basis test", and 29 C.F.R. § 541.604. The latter section generally permits an employer to "provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). The Defendant maintains that it paid the Plaintiff his guaranteed compensation on a "salary basis" as defined in section 602. Furthermore, the Defendant argues that because the hourly premium pay was for "hours worked for work beyond the normal workweek", the compensation structure still met the salary basis requirements because section 604(a) explicitly provides that:

> [T]he exemption is not lost if an exempt employee who is guaranteed at least. $455 each week paid on a salary basis also receives additional compensation

based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

29 C.F.R. § 541.604(a). As a result, the Defendant argues that the premium pay does not result in the loss of the exemption and it is therefore entitled to summary judgment dismissing the complaint.

On the other hand, the Plaintiff asserts that because his total compensation was calculated as a function of the hours he worked, he was not compensated on a "salary basis" under section 602. Furthermore, even if the method for computing his total compensation is sufficient to satisfy the "salary basis" test under section 602, the Plaintiff argues that section 604(b) caveats that a such a method is only permissible to the extent that a "reasonable relationship exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604(b). According to the Plaintiff, the significant disparity between his total annual compensation and his "guaranteed" compensation raises an issue of fact as to whether his compensation structure satisfied the reasonable relationship requirement and therefore whether he was properly classified as an "exempt" salaried professional.

As set forth below, the Court finds that the Defendant has met its burden in showing that the Plaintiff's guaranteed compensation was paid on a "salary basis" under section 602, and that the hourly premium pay does not destroy the exemption under section 604.

### 1. Whether the Plaintiff was Compensated on a Salary Basis under 29 C.F.R. § 541.602

■ The general criteria for determining whether an employee is paid on a "salary basis" is set forth in 29 C.F.R. § 541.602, which provides that an employee must receive a "predetermined amount constituting all or part" of the employees compensation, which is "not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a); *see also* 29 C.F.R. § 541.602(b) (setting forth what types of deductions are consistent with payment on a salary basis, and what deductions are prohibited). "[T]he agency's use of the word 'predetermined' to describe the salary requirement indicates only that this element of an employee's compensation must be both fixed and determined prior to the period in which it would apply." *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 164 (2d Cir.2008). Here, the Plaintiff asserts that his pay stubs, earning statements, and other evidence of the methods used by the Defendant to calculate his compensation indicate that he was not paid a "predetermined amount", and therefore was paid on a "hourly" and not a "salary" basis.

In support of his argument that he was an hourly and not a salaried employee, the Plaintiff points to the following evidence: (1) the Defendant compensates its regular pharmacists by setting a pay "Rate Code" for each of them, which is an hourly "Compensation Rate" for an expected number of hours worked, which, in the Plaintiff's case, was 44 hours; (2) in the Defendant's records the Compensation Rate is the per hour rate for the base salary and is notated as "NAHRLY"; (3) in the Defendant's records, the "Frequency" of pay is referred to as "H"; (4) except in certain instances where the Plaintiff received a yearly bonus, his pay was always a function of the hours he worked; and (5) Plaintiff's bi-weekly "Earning Statements" reflect that his total pay was a function of

"Rate" times "Hours." For its part, the Defendant contends that it calculated the Plaintiff's annual base salary into an hourly "Compensation Rate" solely for accounting purposes, which is a permitted practice under the DOL regulations and the prevailing case-law. The Court agrees.

■ " '[A] payroll accounting system which calculates an exempt employees [sic] pay on an hourly basis does not indicate that the employee was not salaried and, thus, is not subject to the FLSA's minimum wage or overtime wage requirements.' " *Wright v. Aargo Sec. Servs., Inc.,* No. 99–CV–9115, 2001 WL 91705, at *7 (S.D.N.Y. Feb. 2, 2001) (quoting *Palazzolo–Robinson v. Sharis Mgmt. Corp.,* 68 F.Supp.2d 1186, 1192 (W.D.Wash.1999)); *McGuire v. City of Portland,* 159 F.3d 460, 464 (9th Cir.1998); *Spradling v. City of Tulsa,* 95 F.3d 1492, 1500 (10th Cir.1996); *see also Souza v. Sunbelt Auto Group, Inc.,* No. 09–CV–1103, 2010 WL 1381894, at *2 (D.Ariz. April 6, 2010) ("Souza argues that he is entitled to summary judgment because Defendants' payroll records listed him as an hourly employee. The payroll classification of Souza is not dispositive. An employee may be labeled as hourly in the employer's books and yet actually qualify as salaried."); *Adams v. Niagara Mohawk Power Corp.,* No. 02–CV–1353, 2008 WL 4527694, at *6 (N.D.N.Y. Sept. 30, 2008) ("Moreover, the fact that an employer keeps records of its employee's hours, by itself, has no bearing on that employee's status as a salaried worker."); DOL Wage & Hour Division Opinion Letter, 2003 WL 23374601 (July 9, 2003) ("Provided that employees regularly receive each biweekly pay period under the employment agreement no less than 1/26th of their annual salary (except those deductions expressly permitted), their exempt status is not affected by the actual number of hours that are entered for a particular pay period or for each separate week within that pay period, or by how the time is described when it is entered into the payroll system (e.g., regular time, overtime, holiday pay, sick leave, personal leave or other codes). In other words, the tracking or accounting of actual hours worked by exempt employees does not violate the "salary basis" requirements.").

Where, as here, a portion of the employee's annual compensation comes in the form of additional compensation for overtime hours, courts have held that the fact that an employer tracked and recorded an employee's wages in terms of hours is not dispositive of whether they were paid on a "salary basis." For example, in *Bongat v. Fairview Nursing Care Center, Inc.,* 341 F.Supp.2d 181 (E.D.N.Y.2004), the plaintiffs, who were registered nurses, "submitted listings of paychecks that state[d] hourly and overtime rates and the amount paid based upon those rates." They also pointed to evidence that their paychecks fluctuated from paycheck to paycheck based on their hours, to support their contention that they were actually employed on an hourly basis. *Id.* at 185. As in this case, the defendant argued "that plaintiffs were paid a fixed salary per week and additional compensation based upon an hourly rate was paid at the management's discretion as an inducement to provide the facility with sufficient coverage." *Id.*

In *Bongat* the court held that the plaintiffs evidence that their compensation was calculated on an hourly basis was "not necessarily dispositive", but rather "the relevant inquiry is whether an employee was paid a 'predetermined amount' that was 'not subject to reduction' on the basis of the quality or quantity of work performed." *Id.* (citing 29 C.F.R. § 541.118(a) (2003)). However, because the defendant's record of payments indicated an actual practice of reducing the

plaintiffs' compensation based upon the number of hours worked when the plaintiffs worked less than the 40 hours, the court held that the plaintiffs were compensated on an hourly basis. *Id.* at 185–86; *cf. Aaron v. City of Wichita,* 54 F.3d 652, 658–59 (10th Cir.1995) ("Neither the fact that their accrued leave could be deducted for absences, nor the fact that they were paid overtime, nor the fact that their paychecks indicated the number of hours covered contradicts the conclusion that they regularly received a 'predetermined amount constituting ... part of [their] compensation, which [was] not subject to reduction because of variations in the quality or quantity of work performed.' 29 C.F.R. § 541.118(a). We therefore hold that the fire captains, fire battalion chiefs, and fire division chiefs were paid on a salary basis.").

The court in *Bell v. Callaway Partners, LLC,* No. 06–CV–1993, 2010 WL 6231196, 2010 U.S. Dist. LEXIS 36564 (N.D.Ga. Feb. 5, 2010) explained the rationale for why such evidence is less indicative of hourly employment when an employee is paid additional compensation in hourly increments as follows:

> Whenever an employer pays a salaried employee his or her weekly salary plus "additional compensation" calculated as 1/40 of the weekly salary ("straight-time hourly amount") for any hours over 40, it is mathematically true that the weekly salary plus the "additional compensation" equals the straight-time rate times the total hours worked. That fact will always be the mathematical result of calculating the "additional compensation" by multiplying the "straight-time hourly amount" by the "hours worked for work beyond the normal workweek," as expressly approved by the DOL's regulations. An employer does not violate the DOL's salary basis test by doing

exactly what that salary basis test expressly authorizes.

2010 WL 6231196, at *6, 2010 U.S. Dist. LEXIS 35664, at *16–17. However, as indicated in *Bongat* although the evidence showing that the Defendant calculated the Plaintiff's total compensation as a function of hours worked is not dispositive, it may nevertheless indicate that the Plaintiff was paid on an "hourly basis" if it is combined with evidence of improper deductions. Although the Plaintiff fails to address the issue of improper deductions, and in fact refers to improper deductions as "immaterial" to the issue at hand, (*see* Pl.'s Response to Def.'s 56.1 Stmt., ¶ 12), the Court will nevertheless address whether there is a genuine issue of fact with respect to whether the Plaintiff was subject to improper deductions.

■ The standard for losing the exempt status based on improper deductions is met "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997); *Ahern v. County of Nassau,* 118 F.3d 118 (2d Cir.1997). Here, the Plaintiff does not dispute that "CVS's policy was to pay pharmacists their guaranteed base salary so long as they worked at least one hour in any work week" and that "[a]t all times during his employment from November 2003 until June 2009, no deductions were made to Plaintiff's base bi-weekly salary for missed days of work or any other reason." (Def.'s 56.1 Stmt., ¶¶ 9, 12; Pl.'s Response to Def.'s 56.1 Stmt., ¶¶ 9, 12.)

■ However, although the parties agree that no improper deductions were ever made from the Plaintiff's compensation—which could be attributed to the fact that the Plaintiff never worked less than 44 hours in a workweek—"[a]ctual deduc-

tions from pay are neither necessary for an employee to be found non-exempt, nor are they sufficient." *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir.2000). Rather "in the absence of evidence that disciplinary and other deductions have been made in the past, denial of the exemption is appropriate only if there is 'a clear and particularized policy'—one which 'effectively communicates' that deductions will be made in specified circumstances." *Kelly v. City of Mount Vernon*, 162 F.3d 765 (2d Cir.1998) (citing *Auer*, 519 U.S. at 462, 461, 117 S.Ct. 905, 137 L.Ed.2d 79). In particular, the Plaintiff must be able to "point to [a] rule that state[s] that if they commit[ ] a specific infraction, their pay [will] be docked." *Ahern*, 118 F.3d at 122.

At his deposition, the Plaintiff stated that he believed he was an hourly employee who would only be paid for the hours that he worked, and therefore it never occurred to him that if he worked less than 44 hours, the Defendant would pay him for 44 hours. (Anani Dep. 226:14–20.) However, he was unable to point to any rule, practice, or example based on personal experience that provided the basis for his belief. Not only is his speculation insufficient to raise an issue of fact for the purposes of summary judgment, *Harlen Assocs. v. Incorp. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir.2001), but even accepted as true, where there is no evidence of actual deductions, an independent belief that improper deductions would be made "fall[s] well short of establishing a clear and particularized policy." *Coleman–Edwards v. Simpson*, 330 Fed.Appx. 218, 220 (2d Cir.2009); *see also Yourman*, 229 F.3d at 129 (affirming district court's grant of summary judgment to employers despite the appellants' contention that they had knowledge that certain deduction were permitted because "[e]ven assuming those facts to be true, the appellants have shown only that such deductions were permitted,

not that they would 'in fact be made in specified circumstances'"); *Kennedy v. Commonwealth Edison Co.*, 252 F.Supp.2d 737, 745–46 (C.D.Ill.2003), *aff'd* 410 F.3d 365 (7th Cir.2005) ("To the extent that Plaintiffs McPeek and Etter's affidavits state their belief that they would be paid less if they did not make up their missed time (if they failed to use PTO time), there is no factual support for these conclusory statements in the record and their subjective belief is not enough to ward off summary judgment.").

Accordingly, because the payment records reflect a calculation method that is not inconsistent with a salary basis of payment, and because there is no evidence that the Plaintiff was or would have been subject to improper deductions, the Court finds that there is no genuine issue of fact as to whether the Plaintiff's compensation satisfied the salary basis test of section 602.

**2. Whether the Additional Compensation Violated the Salary Basis Test Based on 29 C.F.R. § 541.604**

 Where, as here, guaranteed compensation meets the requirements of the salary basis test in section 602, payments of additional compensation on a non-salary basis can destroy the exemption if the employees guaranteed compensation does not bear a reasonable relationship to his actual compensation. Section 604(b) states that the reasonable relationship test "will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." *Id.* The purpose of the reasonable relationship requirement is to ensure "that the salary guarantee for [employees whose actual pay is computed on an hourly, shift or daily basis] is a meaningful guarantee rather than a mere illu-

sion." DOL Final Rules, 69 Fed.Reg. at 22,184.

Here, on average, the Plaintiff's biweekly paychecks exceeded his "base" by 70%. (*See* Pl.'s Br. at 1.) Although a disparity between guaranteed and actual compensation is a significant factor in the reasonable relationship analysis, it is not the only factor that Court's consider. *See* DOL Wage & Hour Division Opinion Letter, 2003 WL 23374601 (July 9, 2003) ("[B]ecause of the structure and wording of the exemption tests, they must be applied employee-by-employee. Determining the exempt status of any particular employee requires considering the specific conditions of the actual employment experience of each individual employee who must be evaluated under all the applicable tests."). Accordingly, if the reasonable relationship test is applicable, then there is a genuine issue of fact with respect to whether the Defendant properly exempted the Plaintiff from the FLSA overtime requirements and summary judgment must be denied. However, if the reasonable relationship requirement is not applicable, the exemption would not be lost and the Defendant would be entitled to summary judgment.

Because the reasonable relationship test is indisputably applicable to the compensation structure described in section 604(b), the Court first addresses whether the Plaintiff's additional compensation calculated on an hourly basis is properly classified under section 604(a) or 604(b).

Section 604(b) specifically discusses the application of the reasonable relationship requirement to circumstances where an employee's "earnings" are "computed on an hourly, a daily or a shift basis". 29 C.F.R. § 541.604(b). Having already found that the guaranteed portion of the Plaintiff's compensation was paid on a "salary basis" under section 602, the relevant inquiry is whether the fact that the additional compensation was paid on an hourly basis is equivalent to the Plaintiff's "earnings" being computed on an hourly basis.

The Court finds persuasive the recent decision in *Holladay v. Burch, Oxner, Seale Co., CPA's, PA*, No. 07–CV–3804, 2009 WL 614783 (D.S.C. March 6, 2009), where the court examined whether a compensation plan was properly classified under section 604(a) or section 604(b), and therefore subject to the reasonable relationship test. In *Holladay*, the plaintiff, a staff accountant, alleged that the defendant improperly classified her as an FLSA exempt salaried professional, and therefore she was entitled to receive overtime compensation. In particular, the plaintiff argued that her earnings were calculated on an hourly basis, as shown by the following facts: (1) although her salaried wages remained constant, her "other earnings" fluctuated based on the number of hours worked and (2) a mathematical breakdown of her compensation revealed that she was paid based on an hourly rate computed by dividing her total estimated compensation by 2300, the amount of hours she was expected to work each year. The plaintiff claimed that the hourly calculation of her earnings placed her pay scheme within section 604(b), and therefore because her compensation was based on an expectation that she would work 44.23 hours, but her guaranteed wage only covered 32.31 hours per week, there was no reasonable relationship between her guaranteed minimum and her actual compensation.

The court noted that whether the plaintiff's compensation structure fell under section 604(a) rather than section 604(b) would ultimately determine the outcome of the case. This was because if section 604(a) was applicable, the plaintiff would be exempt and the defendant would be entitled to summary judgment. On the other hand, if section 604(b) was the opera-

tive provision, the plaintiff would prevail because the reasonable relationship test would apply, and a guaranteed wage for 32.31 hours did not bear a reasonable relationship to her total compensation. 2009 WL 614783, at *6. The court distinguished section 604(a) and section 604(b) based on whether the guaranteed minimum was intended to compensate for a "normal workweek." Noting the difference between the use of "the normal workweek" in section 604(a), and the "employee's normal scheduled workweek" in section 604(b), the court held that "[c]ommon sense as well as the purpose of the FLSA" supports the interpretation that "[t]he words 'the normal workweek' clearly contemplate a forty (40) hour workweek [because] the FLSA itself generally establishes the right to overtime for hours worked in excess of forty (40) hours." *Id.* Thus, the court held that, if the guaranteed salary was for 40 hours of work, then any additional compensation was payment for hours "beyond the normal workweek" and did not need to satisfy the reasonable relationship test in section 604(b). *Id.* at *7; *see also Caperci v. Rite Aid Corp.,* 43 F.Supp.2d 83, 96, 96 n. 12 (D.Mass.1999) (distinguishing a compensation structure where an employer pays an otherwise exempt employee overtime for hours worked beyond an employee's regularly scheduled hours, from one where an employer pays the minimum salary required by the regulation for ten hours of work and then "overtime" for hours fluctuating between thirty and fifty per week such that the " 'overtime' in reality was regular pay that varied with the quantity of work available").

This method for differentiating "earnings computed on an hourly [ ] basis" and a salary with additional compensation for hours beyond the normal workweek is consistent with the purpose of the salary basis test as explained by the DOL in its discussion of the proposed rules where it stated that:

> The salary basis test also describes the quid pro quo enjoyed by exempt employees, which distinguishes them from nonexempt workers. Exempt employees are not paid overtime for working over 40 hours in a week. In exchange, the employer must provide a guaranteed salary that cannot be reduced when an employee works less than 40 hours.

DOL Proposal, 68 Fed.Reg. at 15,572. In its discussion of the final regulations, the DOL elaborated on this rationale, stating that this quid pro quo "explains that payment on a salary basis reflects an employee's discretion to manage his or her time and to receive compensatory privileges commensurate with exempt status." DOL Final Rules, 69 Fed.Reg. at 22,177. The fact that where, as here, an employer provides an otherwise exempt employee with a monetary incentive to work overtime, does not negate the benefit of a guaranteed salary that is not subject to deductions for hours worked less than 40 hours a week.

Thus, as long as the additional compensation is for hours worked in excess of forty per week, *i.e.* "work beyond a normal workweek", 29 C.F.R. § 541.604(a), and the guaranteed compensation otherwise satisfies the salary basis test requirements in section 602, then the fact that the total compensation can be broken down to an hourly formula is not equivalent to earnings "computed on an hourly [ ] basis" under section 604(b). *See* DOL Wage & Hour Division Opinion Letter, 1999 WL 1002381 (Apr. 1, 1999) ("Where an employee is paid on a salary basis however, it continues to be our opinion that extra compensation by the hour for hours worked in excess of 40 in a workweek, paid in addition to an exempt employee's guaranteed salary, would not defeat the exempt status

of an otherwise exempt employee."); *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir.2006) ("That Detroit Edison chooses to pay what it terms 'straight-time' overtime compensation—in other words, additional compensation at the exempt employee's 'hourly' rate for hours worked beyond 40 in a work week—does not violate the salary-basis test."); *Fife v. Harmon*, 171 F.3d 1173 (8th Cir.1999) (hourly overtime payments for hours worked in excess of 40 in a week does not defeat the employee's exempt status); *Kennedy v. Commonwealth Edison Co.*, 252 F.Supp.2d 737 (C.D.Ill.2003) (ruling that a bonus plan that provided additional compensation to administrative employees for additional hours worked beyond the traditional 40–hour workweek was not inconsistent with the salary basis test); *cf.* DOL Final Rules, 69 Fed.Reg. 22,184 (A commenter raised the concern that permitting additional compensation could allow an employer to circumvent the salary basis requirement, and provided the example of registered nurses, whose average pay was $30 per hour and who therefore earned the guaranteed minimum in two shifts, potentially resulting in the entire balance of their workweek being compensated as "extra compensation." The DOL stated that this was an example of *"an employee compensated on an hourly basis, or on a shift basis"*, and therefore the reasonable relationship test applied. Therefore, the DOL stated "if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer could not guarantee such an employee only the minimum salary required by the regulation.") (emphasis added).

As a result, the Court finds that because the Defendant guaranteed the Plaintiff his base pay on a "salary basis" as defined in section 602 for at least a "normal workweek", and the hourly premium pay was only for hours worked in excess of 44 hours per week, his compensation structure is properly classified as permissible under section 604(a) and does not negate his salary status. *See Archuleta v. Wal–Mart Stores, Inc.*, 543 F.3d 1226, 1230 (10th Cir.2008) ("If a pharmacist worked *more* than his base hours in a given pay period, Wal–Mart further agreed to pay that pharmacist additional compensation for those extra hours . . . A full-time pharmacist, therefore, received overtime compensation of a sort, but did not receive overtime compensation to the same extent the FLSA would require. The fact that Wal–Mart compensated its pharmacists for extra hours worked during a pay period did not change their salaried status."); *Caperci v. Rite Aid Corp.*, 43 F.Supp.2d 83, 96 (D.Mass.1999) ("Rite Aid's policy of paying overtime to pharmacists who work more than their regularly scheduled hours does not defeat the professional exemption."); *Anunobi v. Eckerd Corp.*, No. 02–CV–820, 2003 WL 22368153, at *4–5 (W.D.Tex. Oct. 17, 2003) (fact that Plaintiff received an additional $5 for hours worked beyond 40 or 42 as "premium pay" does not negate his salary status).

Although the Defendant contends that the Court need not inquire further after determining that the additional compensation was permitted under section 604(a), the Plaintiff argues that the reasonable relationship test is nevertheless applicable where, as here, "the employee's predetermined base pay is so far below his total compensation as to make the base pay's status as a salary merely an illusion." *Wright v. Aargo Sec. Servs., Inc.*, No. 99–CV–9115, 2001 WL 91705, at *6 (S.D.N.Y. Feb. 2, 2001). The Plaintiff's rationale for this argument is that having a disproportionate amount of total compensation calculated on an hourly basis is inconsistent

with the notion of a salaried employee and the purpose of the FLSA overtime provision "to apply financial pressure to 'spread employment to avoid the extra wage' and to assure workers 'additional pay to compensate them for the burden of a workweek beyond the hours fixed in the act.'" *In re Novartis Wage and Hour Litig.*, 611 F.3d 141 (2d Cir.2010) (quoting *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir.2009)) (internal quotation marks and citation omitted).

The Plaintiff's position is not without support. For example, in *Brock v. Claridge Hotel & Casino*, 846 F.2d 180 (3d Cir.1988), the court noted that the concept of additional compensation as an incentive to work additional hours was inconsistent with being paid on a salary basis because

> [i]f an incentive at all, it does not encourage the supervisor to make better use of his time, but only to work more hours. Such encouragement is inconsistent both with salary payment and executive employment. Where, as here, the employee's usual weekly income far exceeds the "salary" guarantee, the guarantee can have no impact on the employee's performance or his status.

*Id.* at 185; *see also Borda v. Sandusky Ltd.*, 166 Ohio App.3d 318, 850 N.E.2d 766 (Ohio App. 6th Dist.2006) (holding that the defendant improperly exempted the plaintiffs who received a "salary" of $32,000 based on a 40 hour work week plus overtime for hours over 40 at a straight-time wage of $15.38, based in part on the fact that the reasonable relationship requirement was not satisfied because the plaintiffs worked approximately 500 hours of overtime each year and therefore their weekly earnings amounted to roughly 80% of their total earnings). However, putting aside the fact that both of these cases are distinguishable insofar as *Brock* involved earnings calculated on an hourly basis and

the employees in *Borda* were subject to improper deductions, the Court respectfully disagrees with the conclusion that the monetary incentives for overtime work, particularly here where the Plaintiff's guaranteed salary was above $100,000, is inconsistent with payment on a salary basis or the purpose of the FLSA.

First, the Court notes that section 604(a) does not limit the method of permissible overtime compensation, nor does it caveat that overtime payments are only permissible as long as they do not substantially exceed the guaranteed minimum. The Court finds instructive the recent decision by the Eleventh Circuit in *Bell v. Callaway Partners, LLC*, 394 Fed.Appx. 632 (11th Cir.2010) affirming a grant of summary judgment for the defendant employer. In *Bell*, the plaintiffs were bookkeeper/accountants employed as consultants by the defendant Callaway Partners to perform a large-scale financial audit. The plaintiffs were guaranteed a weekly salary of $1600 or more. In addition, as an *incentive to work additional hours*, the plaintiff's were paid a "bonus" at a straight-time hourly rate based on the cumulative number of billable hours worked, and then awarded for any additional hours over forty that a plaintiff worked in a given week. Relying on its previous finding in *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir.2004) that "as long as there is a non-deductible minimum, additional compensation on top of the nondeductible salary is permissible", the Eleventh Circuit noted that "while additional compensation is permissible, the regulations do not require additional compensation, nor do they prescribe a set method for setting up a bonus system." *Bell*, 394 Fed.Appx. at at *634 (citing 29 C.F.R. § 541.604(a)). Thus, the Eleventh Circuit held that as long as there was a "nondeductible minimum weekly salary, [the defendant] was free to structure any bonus

program as it saw fit." *Id.* Notably, the Eleventh Circuit held that additional compensation did not frustrate the salary basis test regardless of the fact that the incentive program "was designed in a way that encouraged overtime work." *Id.*

Furthermore, providing salaried employees with additional compensation for overtime hours specifically as an incentive to take on additional work has been frequently upheld as a legitimate business decision. *See Havey v. Homebound Mortgage, Inc.,* 547 F.3d 158 (2d Cir. 2008) ("The defendant's two-part salary scheme was not designed for the purpose of circumventing the requirements of the FLSA. Rather, it was designed to give underwriters an *incentive to take on larger quantities of work,* while maintaining standards of care so that they were not receiving additional pay for shoddy work that needed to be done over") (emphasis added); *Kennedy v. Commonwealth Edison Co.,* 252 F.Supp.2d 737 (C.D.Ill.2003) ("[I]t is apparent from the record that additional payments made to Plaintiffs were not an attempt to circumvent regulatory requirements, but a method for *rewarding employees for time and effort beyond their normal commitment.*") (emphasis added); *cf. Acs v. Detroit Edison Co.,* 444 F.3d 763, 770 (6th Cir.2006) ("[Plaintiffs have not] shown that the Fair Labor Standards Act generally circumscribes an employer's authority to choose the mechanics of a compensation system that suits its business needs.").

In the recent case of *Parmar v. Safeway Inc.,* No. 10–CV–421, 2011 WL 888238 (W.D.Wash. March 14, 2011), the court held that providing an incentive for salaried pharmacists to work overtime does not violate the salary basis requirement, regardless of the fact that it results in fluctuating compensation and potentially requires an employer to hire fewer work-ers. In *Parmar,* the plaintiff, a pharmacist at Safeway, was paid a guaranteed salary based on a forty hour workweek, and was paid premium pay at a "special rate" for hours worked beyond the forty a week hours. Similar to the instant case, the policy with respect to premium pay stated that it was offered based on the company's frequent need for pharmacists "to work more than their assigned schedules due to staffing shortages and emergency time off requests" as an "incentive to motivate pharmacists to work on their days off [and therefore] *reduce the need for the use of outside staffing services.*" 2011 WL 888238, at *1 (emphasis added).

In addition, in *Parmar,* the plaintiff received a signing bonus when she was hired and a discretionary annual bonus. The court rejected the plaintiff's contention that the varying pay scales that resulted from the premium pay violated the salary basis requirement, holding that the payments were permissible "additional compensation" under 604(a) and therefore did not constitute a basis to deny the motion for summary judgment. *Id.* at *4.

Thus, the fact that the CVS policy specifically stated that premium pay was "an additional incentive and reward for Pharmacists who work extra shifts and help the company meet its service goals" (Def.'s 56.1 Stmt., Ex. D at 10), which resulted in the Plaintiff receiving fluctuating paychecks and potentially the need to hire fewer workers, does not violate the salary basis requirement.

Finally, as the Defendant correctly notes, in situations where, as here, the employee's guaranteed salary exceeds $100,000, the Plaintiff's argument that disproportionate amounts of salary being calculated on a non-salary basis is somehow inconsistent with the purpose of the FLSA is directly contradicted by the highly compensated employee exemption. As previ-

ously discussed, under the highly compensated employee exemption, a professional employee earning at least $100,000 is exempt from the FLSA overtime requirements, as long as at least $455 per week, or $23,660 annually, is paid on a salary basis. 29 C.F.R. § 541.601. The remaining $76,340 can be comprised of "nondiscretionary compensation" that is not paid on a salary basis. *Id.* Thus, insofar as overtime compensation for hours worked beyond a normal workweek is a form of "nondiscretionary compensation", the FLSA exempts a "highly compensated employee", despite the fact that more than half of his or her annual compensation is paid on an hourly basis.

Here, the Plaintiff was guaranteed a base salary in excess of $100,000 based on a 44 hour workweek. Although the Plaintiff did not take advantage of the salary guarantee, the Defendant has established that the Plaintiff would have been paid his salary regardless of whether he worked his 44 base hours. As a salaried professional employee, the Plaintiff was not entitled to any overtime compensation. However, the Defendant made the business decision to provide a monetary incentive for its salaried pharmacists to take on additional work rather than hire additional pharmacists. As the highly compensated employee exemption acknowledges, not only is the disparity in compensation created by this incentive program not contrary to the FLSA, but, when it results in high levels of compensation, it is sanctioned by the FLSA. *Cf. Freeman v. Nat'l Broadcasting Co., Inc.*, 80 F.3d 78, 87 (2d Cir. 1996) ("Although salary is not the principal ingredient in determining exemption status, it is in the mix of ingredients. The plaintiffs' relatively high salaries suggest that they are the type of employees Congress intended to exempt from FLSA coverage.").

The Defendant has met its burden of showing that the Plaintiff was a highly compensated salaried professional exempt from the overtime requirements of the FLSA. Accordingly, the Defendant is entitled to summary judgment dismissing the complaint.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED,** that the Defendant's motion for summary judgment is granted. The complaint is dismissed. The Clerk of the Court is directed to close this case.